IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-07499 |
| ALDERKS TIRE SERVICE, INC., an Illinois Corporation, formerly Marvin Alderks Tire Service and Successor of Hub Oil Company, an Illinois corporation; KRISTINE M. PIERCE, Personal Representative of the Estate of Marvin H. Alderks, deceased; and KELLEY WILLIAMSON COMPANY, an Illinois Corporation, | ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzman  Magistrate Judge Sheila Finnegan |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| ALDERKS TIRE SERVICE, INC., an Illinois Corporation, and KRISTINE M. PIERCE, Personal Representative of the Estate of Marvin H. Alderks, deceased. | ) ) ) ) | |
| Defendants/Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| KELLEY WILLIAMSON COMPANY, an Illinois Corporation, NORTHERN ILLINOIS GAS COMPANY, an Illinois corporation, and STAN OLSEN OILS, INC., an Illinois Corporation, | ) ) ) ) ) ) | |
| Third Party Defendants. | ) ) | |

**NORTHERN ILLINOIS GAS COMPANY D/B/A NICOR GAS COMPANY'S
SUPPLEMENTAL RESPONSE TO MOTION TO ENFORCE SETTLEMENT**

Third Party Defendant, NORTHERN ILLINOIS GAS COMPANY d/b/a NICOR GAS

COMPANY, an Illinois Corporation ("Nicor Gas") by and through its attorneys, Jacqueline M.

Vidmar and Emily N. Masalski of Rooney Rippie & Ratnaswamy LLP, states as follows for its

Supplemental Response to the Motion to Enforce Settlement ("Motion") filed by

Defendants/Cross-defendants ALDERKS TIRE SERVICE and KRISTINE PIERCE (collectively "Alderks") and Defendants/Third Party Defendant/Cross-claimant, Kelley Williamson Company, an Illinois Corporation ("KWC"):

## BACKGROUND

1.      This action was brought by BNSF against the Defendants for "damages flowing from contract, tort and trespass claims associated with the property located at 100-101 E. Second Avenue, Rochelle, Illinois which is owned by BNSF (the "Site")." *See,* Alderks Third Party Complaint, at ¶1.

2.      Nicor Gas owns the property located in the 200 block of 2nd Avenue in Rochelle, Illinois ("MGP Site"). The MGP Site is located to the west of the BNSF Site; the properties are separated by a right-of-way which is neither owned by Nicor Gas or BNSF.

3.      On or about March 6, 2017, Defendant Alderks filed its Third Party Complaint against Nicor Gas and KWC, alleging that Nicor Gas and KWC contributed to the damages alleged by BNSF at the Site.

4.      On May 8, 2017, Nicor Gas filed its Answer and Affirmative Defenses to the Third Party Complaint, in which it (1) denies that the BNSF Site has been impacted by the MGP Site; and (2) makes no claim regarding any damages to the MGP Site.

5.      On or about May 30, 2017, KWC filed its Cross Claims against Nicor Gas.

6.      On or about June 6, 2017, Nicor Gas filed its Answer and Affirmative Defenses to KWC's Cross Claim.

7.      On May 8 and June 23, 2017, Nicor Gas participated in the first and second settlement conference between the Parties.

8.      As reflected in the Transcript of the Sealed Proceedings (the "Transcript"), Nicor Gas had to obtain management approval prior to agreeing to the proposed Settlement. *See*,

Transcript at page 10, lines 10-13; page 11, lines 8-11. A copy of the Transcript will be submitted to Judge Finnegan as Exhibit 1.

9.      On June 27, 2017, counsel for Nicor Gas emailed the Parties and informed them of the status of the pending approval of Settlement ("re any petroleum impacts to the BNSF property"). A true and correct copy of the June 27, 2017 email will be submitted to Judge Finnegan as Exhibit 2.

10.     On June 28, 2017, counsel for Nicor Gas emailed the Parties and informed them that Nicor Gas "agrees to the terms of settlement discussed last Friday." A true and correct copy of the June 28, 2017 email will be submitted to Judge Finnegan as Exhibit 3.

11.     On July 12, 2017, the initial draft of the Settlement Agreement was circulated by Plaintiff's counsel.

12.     On July 27, 2017, Nicor Gas circulated its comments and revisions to the Settlement Agreement to the Parties via email. A true and correct copy of the July 27, 2017 redline draft will be submitted to Judge Finnegan as Exhibit 4.

13.     At all times relevant hereto, Nicor Gas requested that the Settlement Agreement clearly reflect the understanding of the Parties with respect to two clarifying terms: (1) any mutual release provision pertains only to the subject of the lawsuit, namely BNSF's claims for contamination existing on its Site; (2) the regulatory carve-out to the confidentiality provision should allow Nicor Gas to submit confidential settlement information (marked confidential) to the Illinois Commerce Commission (the "Commission"), as necessary, in any regulatory recovery proceeding[1] (collectively, the "Clarifications").

---

[1] Nicor Gas is a public utility subject to the jurisdiction of the Commission. Nicor Gas' MGP-related expenditures must undergo an annual prudency review by the Commission under an existing rider.

14.     No party raised the issue of claims or potential damages for contamination on Nicor Gas' MGP Site in pleadings, correspondence, or in settlement discussions before the Magistrate Judge.

15.     The settlement terms clearly demonstrate that Nicor Gas has received no consideration for a release of its claims for any damages to the MGP Site.

16.     Each of the redline agreements circulated by BNSF and reviewed by Nicor Gas had incorporated language reflecting the Clarifications requested by Nicor Gas.  Counsel for Defendants did not express any objections to these terms to Nicor Gas.

17.     On or about August 11, 2017, KWC and Alderks circulated their proposed release language via email.  In response, counsel for Nicor Gas reiterated the clarification for the proposed release language to exclude property owned by Nicor Gas.  Nicor Gas understood this clarification to be without controversy, both through consent and lack of objection from counsel for the other Defendants.

18.     On August 22, 2017, Defendants filed their Motion to Enforce Settlement ("Motion") which largely focused on the disagreement between KWC, Alderks, and BNSF as to which redline version of the Settlement Agreement to work from.

19.     In their Motion, Defendants requested that the Court direct BNSF to execute the version of the Settlement Agreement proposed by the Defendants on August 16, 2017. Motion at 6.

20.     On August 30, 2017, Nicor Gas expressed its acceptance of the latest Settlement Agreement circulated by BNSF on August 27, 2017, subject to the addition of the Clarifications. A true and correct copy of the August 30, 2017 email will be submitted to Judge Finnegan as Exhibit 5.

4

21.     On September 14, 2017, Nicor Gas filed its Reply to the Motion and expressed its acceptance of the latest Settlement Agreement circulated by BNSF on August 27, 2017, subject to the addition of the Clarifications.

22.     On September 15, 2017, KWC and Alderks filed their Reply in Support of the Motion. In their Reply, KWC and Alderks requested that the Court "compare the terms [of the written Settlement Agreement] side by side." Defendants' Reply at ¶¶12-13.

23.     Defendants also requested that the Court direct BNSF to execute the version of the Settlement Agreement proposed by the Defendants on September 14, 2017. Defendants' Reply at 6.

24.     In their Reply, Defendants changed their position from requesting that the Court direct BNSF to execute the version of the Settlement Agreement proposed by the Defendants on August 16, 2017.  Instead, Defendants requested that the Court direct BNSF to execute the version of the Settlement Agreement proposed by the Defendants on September 14, 2017.

25.     Throughout the briefing in this matter, Defendants have not raised any objection to the language circulated by Nicor Gas, and their Motion did not request that the Court direct Nicor Gas to execute any version of the Settlement Agreement. *See*, Defendants' Motion and Defendants' Reply.

26.     On September 27, 2017, counsel for BNSF circulated another redline version of the Settlement Agreement and proposed setting up a conference call to discuss.

27.      On September 28, 2017, counsel for BNSF again asked if the Parties would like to discuss by conference call.  In response, counsel for Nicor Gas inquired as to the proposed time for such call.

28.     At 1:37 p.m. on September 28, 2017, counsel for KWC informed BNSF that they rejected BNSF's draft and that the Defendants did not have time to discuss the specifics.

29.     Instead, during the hearing on September 29, 2017, counsel for Defendants changed their position a third time: counsel for KWC made an oral request that the Court enter the Transcript as the Settlement Agreement between the Parties.

30.     Defendants' counsel refused to supplement the Transcript with language reflecting the terms agreed to by Nicor Gas.

## I.     DEFENDANTS' ORAL REQUEST TO ENTER THE TRANSCRIPT AS THE SETTLEMENT AGREEMENT SHOULD BE DENIED.

31.     During the hearing on September 29, 2017, Defendants Alderks and KWC changed the terms of the settlement and instead made an oral request to the Court that proposed executing the Transcript as the final settlement agreement between the Parties.

32.     In making such request without adequate notice to Nicor Gas, Defendants Alderks and KWC attempted to obtain judicial enforcement of its oral settlement agreement on the grounds that it is, in effect, a substitute for a "further typed-written formal settlement agreement to be executed by the Parties." *See*, Transcript at page 3, lines 8-12; page 11, lines 15-20 (Under Seal).

33.     A written settlement agreement has always been contemplated and expected by the Parties as part of their oral settlement. *Id.*

34.     A district court has "the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). If a case has been dismissed with prejudice, however, "it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007); see also *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002).

35.     In such an instance, "[a] disagreement about whether parties to a settlement have honored their commitments is a contract dispute," which "cannot be adjudicated in federal court unless there is an independent basis of subject matter jurisdiction, such as diversity." *See Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d 571, 573 (7th Cir. 2015).   Federal courts enforce settlement agreements by reference to state contract law. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) ("State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2014 WL 4724387, at *4 (N.D. Ill. Sept. 23, 2014) ("A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally").

36.     The settlement agreement contemplated in this case provides for Illinois law. Under Illinois law, a valid settlement agreement requires an offer, an acceptance, and consideration. *See Pompeo v. Exelon Corp.*, No. 12 C 10098, 2014 WL 642756, at *2 (N.D. Ill. Feb. 19, 2014).   In addition, a settlement agreement is enforceable if there was a meeting of the minds or mutual assent as to all material terms, and such terms are definite and certain. *See Beverly*, 817 F.3d at 333; *see also Coldwell Banker Real Estate LLC v. Centanne*, No. 10 C 2299, 2010 WL 4313766, at *2 (N.D. Ill. Oct. 25, 2010).

37.     Appling this case law, the Transcript does not fully reflect material, definite, and certain terms agreed upon by Nicor Gas.  The Transcript describes the "global release" between the parties with respect to "the site at issue and **any environmental-related claims arising with respect to that site**." *See,* Transcript at page 5, lines 23-25; page 6, lines 1-2 (emphasis added).

38.     Nicor Gas has simply asked for specific clarification that the "global" release pertains only to the subject of the lawsuit, namely damages to the BNSF property -- and no other property.  Nicor Gas' concern is that the Transcript language, even coupled with the emails from

7

counsel for Nicor Gas accepting the settlement for "any petroleum impacts to the BNSF property," could be interpreted broadly to cover contamination that originated on the BNSF property and migrated off-site to property owned by Nicor Gas or third-parties. Such an interpretation would clearly be beyond the scope of the settlement terms agreed to by Nicor Gas.

39.     Nicor Gas does not dispute that the Parties orally reached the terms of a settlement during the June 23, 2017 settlement conference. However, the Transcript clearly indicates that it was the intention of the Parties and Nicor Gas to formalize the terms of the Settlement in a formal written agreement. *See*, Transcript at page 3, lines 8-12; page 11, lines 15-20 (Under Seal).

## II.     DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT SHOULD BE DENIED.

40.     In their Reply filed on September 15, 2017, Defendants changed their position from requesting that the Court direct BNSF to execute the version of the Settlement Agreement proposed by the Defendants on August 16, 2017. Instead, Defendants requested that the Court direct BNSF to execute the version of the Settlement Agreement proposed by the Defendants on September 14, 2017. This change in position occurred after Nicor Gas had filed its Reply brief on September 14, 2017.

41.     At all times, Nicor Gas used its best efforts to work with the Parties in drafting the formal settlement agreement to ensure that it fully reflect definite and certain terms agreed upon by Nicor Gas.

42.     Under Illinois law, the existence of a valid and enforceable contract is a question of law when the basic facts are not in dispute. *See Beverly*, 817 F.3d at 333. *See also Voso v. Ewton*, 2017 WL 365610, at *11 (N.D. Ill. Jan. 25, 2017) citing *Coldwell Banker Real Estate Corp. v. L.T.R.C., LLC*, No. 05 C 2492, 2007 WL 118227, at *3 (N.D. Ill. Jan. 11, 2007) ("the

Settlement Agreement plainly constitutes a binding contract between Coldwell Banker, on the one hand, and Franchisee and Long, on the other").

43. Although a district court has the inherent authority to summarily enforce a settlement agreement, when the existence or terms of a settlement agreement are in dispute, the district court should hold an evidentiary hearing to resolve the disputes or ambiguities. *Craftwood*, 2014 WL 4724387 at \*11 ("If there are disputed material facts, the district court should hold an evidentiary hearing. Where the record points to only one conclusion, however, the court need not hold a hearing").

44. Nicor Gas respectfully requests that the Court – in the exercise of its inherent powers – deny Defendants' Motion to Enforce and instead schedule an evidentiary hearing to resolve disputes or ambiguities as deemed necessary by this Honorable Court.

WHEREFORE, Third Party Defendant, NORTHERN ILLINOIS GAS COMPANY d/b/a NICOR GAS COMPANY, an Illinois Corporation submits this Supplemental Response to the Motion to Enforce Settlement filed by Defendants Alderks and KWC and requests that this Honorable Court: (1) deny Defendants' oral request to enter the Transcript as the Settlement Agreement; (2) deny Defendants' Motion to Enforce; and (3) schedule an evidentiary hearing to resolve disputes or ambiguities as deemed necessary by the Court, and for such other and further relief as this Honorable Court deems just and proper.

Dated:  October 13, 2017

Respectfully submitted,

**NORTHERN ILLINOIS GAS COMPANY D/B/A NICOR GAS COMPANY**

By: /s/ Emily N. Masalski

    One of its Attorneys

Jacqueline M. Vidmar
Emily N. Masalski
ROONEY RIPPIE & RATNASWAMY LLP
350 W. Hubbard St., Suite 600
Chicago, Illinois  60654
(312) 447-2821
jacqueline.vidmar@r3law.com
emily.masalski@r3law.com

10

## CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned, an attorney of record for the Third Party Defendant, NORTHERN ILLINOIS GAS COMPANY d/b/a NICOR GAS COMPANY, an Illinois Corporation, hereby certifies that on October 13, 2017, she served or caused to be served a copy of the foregoing *Northern Illinois Gas Company d/b/a Nicor Gas Company's Supplemental Response To Motion To Enforce Settlement* on counsel of record listed below by electronic means pursuant to Electronic Case Filing (ECF):

Sean M. Sullivan
Kathryn M. Doi
Lisa Marie Roccanova
Michael William Shumate
Daley Mohan Groble P.C.
55 W. Monroe Street, Suite 1600
Chicago, IL 60603
(312) 422-9999
ssullivan@daleymohan.com
kdoe@daleymohan.com
lroccanova@daleymohan.com
mshumate@daleymohan.com
*Counsel for BNSF Railway Company*

Joel M. L. Huotari
Russell D. Anderson
Williams & McCarthy
120 W. State Street, Suite 400
Rockford, IL 61101
(815) 987-8900
jhuotari@wilmac.com
RAnderson@wilmac.com
*Counsel for Kelley Williamson Company*

Mark T. Schmidt
Janella L. Barbrow
Schmidt & Barbrow, P.C.
300 S. County Farm Road, Suite F
Wheaton, IL 60187
(630) 690-0100
mschmidt@schmidtbarbrow.com
jbarbrow@schmidtbarbrow.com
*Counsel for Alderks Tire Service, Inc. and Kristine M. Pierce*

Patrick M. Kinnally
Kinnally Flaherty Krentz Loran Hodge & Masur, P.C.
2114 Deerpath Road
Aurora, IL 60506
pkinnally@kfkllaw.com
(630) 907-0909
*Counsel for Stan Olsen Oils, Inc.*

Bruce Joseph Farrell
Law Offices of B. J. Farrell, P.C.
3341 Hobson Road, Suite A
Woodridge, Illinois 60517
(630) 336-1100
bjfarrell@bjfarrelllaw.com
*Counsel for Alderks Tire Service, Inc. and Kristine M. Pierce*

/s/ Emily N. Masalski

Emily N. Masalski

11